UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEREDITH JIMISON,<br><br>                        Plaintiff,<br><br>v.<br><br>AMERICAN GENERAL LIFE INSURANCE COMPANY,<br><br>                        Defendant. | Case No.: 15cv01620 JAH - NLS<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [Doc. No. 25]** |

**INTRODUCTION**

Plaintiff originally filed an action in Superior Court on June 24, 2015, naming American General Life Insurance Company ("AGL") and Does 1 through 100 inclusive as defendants. See Complaint (Doc. No. 1-3). Defendant removed the action to federal court on July 28, 2015. Shortly thereafter, Defendant filed a motion to dismiss the complaint. See Doc. No. 7. This Court granted the motion and provided Plaintiff the opportunity to file an amended complaint. See Doc. No. 21. Plaintiff filed a First Amendment Complaint ("FAC") on October 21, 2016, asserting claims for violation of California Business and Professions Code section 17200 *et. seq.*, breach of the covenant of good faith and fair dealing, and breach of contractual duty to pay a covered claim. Plaintiff alleges Defendant uses the Social Security Death Master File ("DMF"), which reports the deaths of American

citizens, to withhold death benefit payments. FAC ¶ 1. Plaintiff further alleges Defendant used the DMF to cut off lifetime payments to annuitants and beneficiaries under its annuity policies, and, at the same time, failed and refused to pay death benefits to beneficiaries based on deaths reported in the DMF. Id. He further alleges, following an investigation by state regulators, Defendant agreed to identify deceased insureds through the DMF and make payments to beneficiaries. Id. ¶¶ 2, 17. Plaintiff asserts he was a beneficiary on an AGL policy insuring the life of his father. Id. ¶ 21. He alleges, 7 years after his father's death, he received a letter from AGL requesting he complete a statement and send a copy of the death certificate to receive policy benefits, and he complied. Id. ¶¶ 23, 24. Later, he alleges, he received a check for $1,072.25, which comprised of a $1,000 death benefit and $72.25 in interest. Id. ¶ 25. He asserts Defendant underpaid the proceeds under California law and the policy.

Defendant filed a motion seeking dismissal of the FAC pursuant to Rule 12(B)(6) of the Federal Rules of Civil Procedure along with a request for judicial notice. See Doc. Nos. 25, 25-4. Plaintiff filed an opposition and an objection to Defendant's request for judicial notice. See Doc. Nos. 29, 30. Defendant filed a reply in support of the motion to dismiss and a reply in support of its request for judicial notice. See Doc. Nos. 32, 33. Finding the matter suitable for determination without oral argument, the Court vacated the hearing date pursuant to Local Rule 7.1.

After a review of the parties' submissions and for the reasons discussed below, the Court GRANTS Defendant's motion to dismiss.

## LEGAL STANDARD

Rule 12(b)(6) tests the sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984); see Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory

yet fails to plead essential facts under that theory. Robertson, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," he must plead sufficient facts that, if true, "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. Ileto v. Glock, Inc., 349 F.3d 1191, 1200 (9th Cir. 2003); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). When ruling on a motion to dismiss, the Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the Court takes judicial notice. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). If a court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

**JUDICIAL NOTICE**

Defendant requests judicial notice of the legislative history of California Insurance Code section 10172.5, and "materials associated with determination of the beneficiary of the Meredith A. Jimison life insurance policy," namely, the Jimison life insurance policy application, and correspondence from AGL regarding payment of the Jimison policy proceeds. See RJN at 1 (Doc. No. 25-4). Under Rule 201, this Court may take judicial notice of an adjudicative fact "not subject to reasonable dispute because it can be . . . accurately and readily determined from sources whose accuracy cannot be reasonably questioned." See Fed. R. Evid. 201; Grason Elec. Co. v. Sacramento Mun. Util. Dist., 571 F. Supp. 1504, 1521 (E.D. Cal. 1983).

Plaintiff objects to the request to take judicial notice of "the materials associated with determination of the beneficiary of the Meredith A. Jimison life insurance policy," specifically, exhibits B, D and E. He argues the materials lack proper authentication, are incomplete and unreliable.

## I. Exhibit A

Defendant submits the legislative history of Section 10172.5 in Exhibit A of its request for judicial notice. Defendant contends the legislative history is relevant to its motion to dismiss and Plaintiff's complaint. Plaintiff does not object to this request. The Court GRANTS Defendant's request to take judicial notice of the legislative history.

## II. Exhibit B

Defendant's Exhibit B consists of an application for insurance purportedly filled out by the decedent Meredith A. Jimison. Defendant contends the FAC explicitly references and relies on the policy and, because allegations regarding the beneficiary listed on the policy are central to Plaintiff's claims, the Court may take judicial notice.

Plaintiff disputes the authenticity of Defendant's Exhibit B and maintains Defendant is repeating its request for judicial notice of the policy that this Court previously denied. He further maintains Defendant cannot say the materials in Exhibit B are true, correct and

4

15cv01620 JAH - NLS

complete copies of the policy. He also maintains Defendant altered the Specimen Policy by adding additional information to make it appear to be the policy at issue in this matter.

In reply, Defendant argues because Plaintiff places the beneficiary designation at issue and the authenticity of the document reflects the designation is not reasonably subject to dispute, the Court may take judicial notice of Exhibit B. Defendant further argues the Specimen Policy is not part of Exhibit B, and the objections are, therefore, misplaced. Defendant maintains the document is authenticated by Ronalda Adcock, AGL's Director of Life Claims.

While the Court may consider documents relied upon but not attached to the complaint when the document's authenticity is not contested, there is no indication that Plaintiff's FAC relies upon the application for insurance. Additionally, Plaintiff contests its authenticity. Portions of Plaintiff's argument refers to additional documents not contained in Exhibit B. However, he does dispute the authenticity of the application itself. As such, the application is not proper to be considered pursuant to "incorporation by reference," as asserted by Defendant.

Defendant attempts to authenticate the application through the declaration of Ronalda Adcock, however, she is not a signatory of the document. The Court's reliance on the Adcock declaration is improper to support judicial notice and would be more appropriately considered in a motion for which the Court could consider extrinsic evidence.

Therefore, the Court SUSTAINS Plaintiff's objection to Exhibit B and DENIES the request to take judicial notice of the application.

**III. Exhibit C**

Defendant seeks judicial notice of letters from Defendant to the insured's family dated February 3, 2014, and March 5, 2014. Plaintiff does not object to the request to the Court to take judicial notice of these letters.

The Court GRANTS Defendant's request for judicial notice of the letters attached as Exhibit C.

//

## IV. Exhibits D and E

Defendant also seeks judicial notice of an email dated April 17, 2017 from Charlene Nichols, Claims Analyst for AGL, to Plaintiff, labeled as Exhibit D. Exhibit E is a certificate of death. Plaintiff argues Exhibits D and E are objectionable because they are not referred to in the complaint and not central to Plaintiff's claims. Defendant argues Exhibits D and E are essential to Plaintiff's allegations that he is the beneficiary of the Jimison Policy.

Defendants seek to admit extrinsic evidence to dispute the allegations of the complaint. This evidence is not proper for judicial notice. Accordingly, the Court SUSTAINS Plaintiff's objections as to Exhibits D and E, and DENIES Defendant's request for judicial notice of the documents and facts contained therein.

## DISCUSSION

Defendant argues Plaintiff fails to allege facts to demonstrate Defendant failed or refused to pay the death benefits owed Plaintiff within the meaning to section 10172.5 and seeks dismissal of the FAC in its entirety.

## I. Section 10172.5

Defendant maintains Plaintiff's action depends on the incorrect assumption that Defendant was obligated to pay the proceeds of the life insurance policy as soon as the insured died in 2007. Defendant argues Plaintiff's allegations ignore California law which requires submission of claim documentation before there is an obligation to pay the policy proceeds. Defendant contends it had no obligation to pay until claim documentation was filed, and Plaintiff fails to allege he filed a claim prior to 2014.

Defendant maintains section 10172.5 does not apply where no claim has been made. Specifically, Defendant maintains section 10172.5 provides that an insurer who fails or refuses to pay the proceeds of any life insurance policy within 30 days after the date of death of the insured shall pay interest from the date of the insured's death. Defendant argues, "fails or refuses to pay" necessarily requires that insurers first have been provided with notice of the claim and an opportunity to consider whether to pay the claim.

Defendant maintains the legislative history of section 10172.5 supports this conclusion, as previously determined by this Court. Defendant contends Plaintiff makes no allegations that any proceeds under the policy were payable prior to 2014, or that Defendant delayed payment once the required documentation was submitted. Thus, Defendant argues, Plaintiff fails to allege he is entitled to interest under section 10172.5. Defendant further argues Plaintiff's allegations concerning Defendant's use of the DMF are not pertinent to whether Defendant received a claim from Plaintiff, and failed or refused to pay a claim within 30 days.

Plaintiff contends he states a claim for violation of section 10172.5. Plaintiff asserts the FAC alleges Defendant had notice of the insured death, and he points to the allegations that Defendant new or should have known of the insured's death through its use of the DMF in support. Plaintiff maintains Defendant used the DMF to cut off lifetime payments to annuitants and beneficiaries under its annuity polices but "turned a blind eye to the DMF when it came to paying death payments due to life insurance beneficiaries." Opp. at 8. Plaintiff contends the State of California and other insurance regulators launched an investigation of Defendant, and as a result of the investigation, Defendant was required to use the DMF to identify deceased insureds and make payments due their beneficiaries. Upon its search, Defendant identified Plaintiff's father and notified Plaintiff on February 3, 2014. Despite this knowledge, Plaintiff argues, Defendant did not pay benefits until Plaintiff submitted a claim statement. Plaintiff maintains the FAC contains facts plausibly alleging that Defendant had notice death benefits were due to Plaintiff but failed to pay those benefits within 30 days of the date of death, and Defendant failed to pay interest at the rate required by section 10172.5. He cites to <u>Burton v. Prudential Ins. Co.</u>, 669 Fed.Appx. 829 (9th Cir. 2016), in support. He further argues Defendant's interpretation of section 10172.5 is inconsistent with section 10172.5, the terms of the policy and

7

15cv01620 JAH - NLS

Defendant's act of paying Plaintiff one percent interest from the date of the insured's death.[1]

In reply, Defendant argues Plaintiff fails to state any cognizable claim to interest under section 10172.5. Defendant contends Plaintiff mistakenly believes this Court determined that interest is due from the date of death when the insurer fails or refuses to pay death benefits after it receives some type of notice or request. Defendant argues this Court's order demonstrates "notice" requires notice of a claim not merely notice of the insured's death, which Defendant contends, is in line with settled law that insurers have no duty to pay insurance proceeds before a claim is made. Because Plaintiff fails to allege Defendant failed to pay benefits within 30 days of receiving a claim or notice of a claim, Defendant argues Plaintiff fails to state a claim for interest under section 10172.5.

Defendant further argues Plaintiff's reliance on Defendant's use of the DMF does not save the FAC, because mere notice of death is not what triggers the obligations to pay benefits.

Additionally, Defendant argues the legislative history supports this Court's interpretation that the purpose of Section 10172.5 is to penalize insurers who delay paying claims and not intended to penalize insurers who have yet to pay proceeds on deaths for which no claim is made, and Plaintiff points to no new facts or law to support his position or refute the Court's interpretation. Defendant also contends Plaintiff reliance on Burton,

---

[1] Plaintiff also argues his position remains that Defendant is required to pay interest at the statutory rate required by section 10172.5 regardless of when it learned or had notice of the insured's death. In support, Plaintiff points to the legislative history which states that 30 days from the date of death constitutes a reasonable period of time for payment of benefits and that any policy paid after 30 days should pay interest from the date of death because life insurance proceeds are intended for the beneficiaries, not the insurers. He maintains the compensatory objective explains why the legislature specifically rejected entreaties by insurance companies to include language in section 10172.5 that beneficiaries should be required to make a claim to trigger the requirement to pay interest on policy proceeds if the proceeds are not paid within 30 days after the date of death. However, this argument was previously rejected by this Court.

is misplaced because Burton concerned calculation of the proper interest rate once a determination has been made that section 10172.5 interest is due, and there is no determination interest is due here.

Under California law, a court must "ascertain the intent of the Legislature so as to effectuate the purpose of the law." State Farm Mutual Automobile Insurance Co. v. Garamendi, 32 Cal.4th 1029 (2004). "In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose." Id. If the statutory language is ambiguous, a court may consider extrinsic information, such as legislative history, the statute's purpose and public policy. People v. Arias, 45 Cal.4th 169, 177 (2008).

Section 10172.5(a) reads, in relevant part:

> each insurer. . .that fails or refuses to pay the proceeds of, or payments under, any policy of life insurance issued by it within 30 days after the date of death of the insured shall pay interest, at a rate not less than the then current rate of interest on death proceeds left on deposit with the insurer computed from the date of the insured's death, on any moneys payable and unpaid after the expiration of the 30-day period.

In this Court's prior order granting Defendant's first motion to dismiss, the Court looked to the language of the statute and determined it was ambiguous because the phrase "fails or refuses to pay" indicates the receipt of notice or request but the statute does not have express language requiring the beneficiary submit a claim.

Upon reviewing the legislative history, this Court determined the legislature sought to penalize insurers who delayed in paying claims. The Court further determined that the legislative history demonstrates that a claim must be made to the insurer who then fails or refuses to pay on the claim in order to trigger the interest penalty.

Plaintiff suggests the Court previously held payment of benefits is required upon notice of the insured's death and argues Defendant's failure to pay benefits within 30 days of learning of the insured's death triggered its obligation to pay interest under section

10172.5.  Defendant argues the Court's previous order indicates the insurer must first receive notice of a claim and be provided the opportunity to pay.  Otherwise, Defendant argues, an insurer will be responsible for interest on claims that were never made and before the policy proceeds were even due, on deaths for which no claim is payable.  As noted by Defendant, requiring payment within 30 days of notice of death could lead to absurd results wherein an insurer is paying benefits before policy proceeds are due or upon deaths subject to policy exclusions.

Additionally, Plaintiff fails to present any authority to support its position that mere notice of an insured's death rather than some claim made to the insurer triggers the insurer's obligation to pay within 30 days. Contrary to Plaintiff's argument, <u>Burton</u> does not support his position.  <u>Burton</u> involved the proper interest rate required by section 10172.5.  The court did not make any determination as to when a beneficiary is entitled to interest under section 10172.5, and expressly refused to consider the defendant's argument that the plaintiff was not entitled to interest for the reason that it never failed or refused to pay, because the argument was not properly raised before the district court.  669 Fed.Appx. at 830, n. 3.

However, this Court finds the discussion of the legislative history in <u>Burton</u> very persuasive.  The court found the history demonstrates the purpose of section 10172.5 is to "provide a disincentive to a practice of some insurance companies of intentionally withholding proceeds from beneficiaries." <u>Id</u>. at 830 (quoting Letter from Assemblyman Alan Sieroty to Governor Edmund G. Brown, dated September 11, 1975).  This further supports this Court's previous finding that payment of interest under section 10172.5 is required when an insurer fails or refuses to pay on a claim within 30 days of receiving the claim or request for payment.

Plaintiff does not allege Defendant failed to pay the policy proceeds within 30 days of receiving his claim.  As such, Plaintiff fails to state a claim under section 10172.5.
//
//

10
15cv01620 JAH - NLS

## II. UCL Claim

Defendant argues Plaintiff's claim under the UCL fails because it is based upon Defendant's alleged violation of section 10172.5, and Plaintiff fails to allege Defendant violated section 10172.5, and Plaintiff fails to show that he has standing to obtain restitution or injunctive relief.

To the extent Plaintiff's claim is based on Defendant's violation of section 1017.25(a), Plaintiff fails to state a claim. As discussed below, Plaintiff also fails to allege standing to support a UCL claim.

The only types of relief available under the UCL are injunctive relief and restitution. See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 179 (1999).

### A. Restitution

Defendant maintains Plaintiff does not allege that he seeks the return of money that was once in his possession, and Plaintiff did not have a vested interest in payment of interest on the death benefit to support a claim for restitution.

Plaintiff argues section 10172.5 acts to vest interest in beneficiaries whose death benefits are not paid within thirty days following the death of the insured. He relies on the Ninth Circuit's conclusion in Burton that the interest rate of section 10172.5 floats along with funds held on deposit and the insurance company is merely passing through at least a portion of the interest it has been earning on the fund over time. He maintains he alleges a vested interest because under California law a contract for life insurance benefits creates rights in the beneficiary which are immediately vested upon the death of the insured. He further maintains the Court's previous determination that he had no vested interest was based on the erroneous notion that section 10172.5 was meant only to punish willful misconduct not to compensate the beneficiary.

In reply, Defendant argues Burton does not characterize the statute as punitive or non-punitive, but merely clarifies the interest rate to be use when an insurer fails or refuses

to pay policy proceeds within 30 days. Defendant maintains <u>Burton</u> does not apply here because no claim was submitted until 2014.

Restitution requires the return of money or property once in the possession of the plaintiff or that in which he or she has a vested interest. <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal.4th 1134, 1149 (2003).

In its previous order, the Court dismissed Plaintiff's UCL claim upon finding Plaintiff has no vested interest in the interest available under section 10172.5 and cannot recover the interest as restitution under the UCL. The Court determined section 10172.5 is designed to punish insurers who fail to timely pay benefits. Plaintiff maintains the holding of <u>Burton</u> demonstrates section 10172.5 vests interest in beneficiaries whose death benefits are not paid within thirty days following the death of the insured. The Court is not persuaded by Plaintiff's argument. As noted by Defendant, the court in <u>Burton</u> did not address whether section 10172.5 was punitive or non-punitive in nature. The limited holding of <u>Burton</u> determined the proper interest rate to be paid by an insurer pursuant to section 10172.5, and that the plaintiff sufficiently alleged the defendant failed to pay the required interest rate. In making these determinations, the court noted the clear purpose of section 10172.5 was to provide a disincentive to the intentional withholding of proceeds by insurers. The purpose of disincentivizing insurer's from delaying payments supports this Court's finding that the statute is punitive. Accordingly, Plaintiff has no vested interest and does not allege he seeks money once in his possession, and, thereby fails to state a claim for restitution under the UCL.

**B. Injunctive Relief**

Defendant contends Plaintiff lacks Article III standing to seek injunctive relief because he has no ongoing contractual relationship with Defendant. Defendant further contends Plaintiff cannot establish irreparable harm to support injunctive relief because he will receive adequate compensation through money damages if he prevails on his claim.

Plaintiff argues has statutory standing to seek injunctive relief under the UCL because he suffered injury in fact and has lost money or property as a result of Defendant's unfair

competition. He also maintains he seeks injunctive relief for conduct to which he was and continues to be subjected and Defendant has presented no evidence of its compliance with section 10172.5 or cessation of the bad faith claims handling practices challenged by Plaintiff.

In reply, Defendant argues injunctive relief is unavailable because any harm suffered by Plaintiff can be compensated with money damages. Defendant maintains Plaintiff fails to address this point.

Plaintiff cannot establish irreparable harm to support injunctive relief because he may receive adequate compensation through money damages if he prevails on his claim. See Colorado River Indian Tribes v. Town of Parker, 776 F.2d 846, 850 (9th Cir. 1985). Accordingly, Plaintiff fails to state a claim for violation of the UCL.

## III. Breach of Contract

Defendant argues Plaintiff's claim for breach of contract fails because Plaintiff does not allege any specific policy provision was breached by Defendant. Defendant maintains, as alleged, the only possible basis for Plaintiff's contract claim is the alleged violation of section 10172.5, which, alone, is insufficient to allege a breach of contract.

In opposition, Plaintiff argues he sufficiently alleges a violation of section 10172.5, and, therefore, his breach of contract claim can no longer be dismissed as derivative. Additionally, he argues Defendant has a contractual obligation to comply with section 10172.5, and he properly alleges a breach of contract in alleging Defendant failed to pay the proper interest rate on its claim payments.

Defendant argues, in reply, Plaintiff's breach of contract claim fails because it depends entirely on his erroneous interpretation of section 10172.5, specifically, on Defendant's failure to pay interest according to section 10172.5.

To state a claim for breach of contract under California law, a plaintiff must allege "(1) existence of the contract; (2) plaintiff's performance or excuse for non-performance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." CDF Firefighters v. Maldonado, 158 Cal.App.4th 1226, 1239 (2008).

In the complaint, Plaintiff alleges Defendant owed contractual duties and obligations to fully pay claims once Defendant determined that payment of the death benefit was due and Defendant breached the policies by failing to pay death benefits within 30 days of the date of the insured's death or, alternatively, by failing to pay death benefits within 30 days of receipt of notice of the insured's death from the DMF and failing to pay the proper interest rate on its claim payments, Plaintiff performed their obligations under the policy, and he suffered damages as a result of Defendant's breach. Compl. ¶¶ 71 – 75. Plaintiff's breach of contract claim, as alleged, is based entirely upon Defendant's failure to pay interest according section 10172.5. Because Plaintiff does not allege Defendant failed to pay interest under section 10172.5 after receiving a claim and failing to pay the claim within 30 days, he fails to sufficiently allege a breach. As such, he fails to state a claim for breach of contract.

## IV. Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendant argues Plaintiff's claim for breach of the implied covenant of good faith and fair dealing fails because Plaintiff does not identify any express contractual provision on which his claim is based, the claim is based upon improper speculation and Plaintiff fails to demonstrate any compensable economic loss. Specifically, Defendant contends Plaintiff's allegations in support of his claim boil down to an assertion that Plaintiff would like discovery on the off-chance that he was underpaid and argues this is insufficient to raise a right to relief above the speculative level. Defendant further contends Rule 8 prevents this type of fishing expedition.

Additionally, Defendant argues Plaintiff fails to allege any compensable economic loss associated with his claim for breach of implied covenant and, therefore, fails to state a claim. Defendant maintains Plaintiff's allegations in support of the claim are primarily premised on Plaintiff's allegations as to section 10172.5, and argues the breach of the implied covenant of good faith and fair dealing claim based upon a violation of 10172.5, just as the claim brought for violation of section 10172.5, fails to state a claim. Defendant also argues the remaining allegations in support of this claim pertain to the provision of

information to Plaintiff.  However, Defendant argues, Plaintiff fails to plead any economic loss in connection with the allegations.

Plaintiff maintains he states an actionable claim for breach of the implied covenant of good faith and fair dealing in connection with his underpaid interest claims.  He argues because he alleges a violation of section 10172.5, his bad faith claim survives.  Specifically, Plaintiff contends Defendant breached Plaintiff's rights to receive all the fruits of the policy by failing to comply with section 10172.5.  Even assuming there is no express contractual obligation to pay interest on unpaid benefits, Plaintiff argues, Defendant had a statutorily incorporated implied obligation not to deprive the beneficiary of the benefits of the policy, including payments under section 10172.5 and an implied obligation under the DMF settlement.  Plaintiff further argues the holding in <u>Burton</u> refutes Defendant's argument that Plaintiff cannot state a claim by speculating that he may have been underpaid.

Plaintiff further maintains he states an actionable claim for bad faith in connection with the payment mishandling claims.  He contends he alleges Defendant acted in bad faith in utilizing unreasonable and unwarranted tactics to pay less than what was due and otherwise obscure information that might confirm or shed light on its underpayment. Additionally, Plaintiff argues he alleges a number of economic damages stemming from Defendants acts in contravention of its duty of good faith and fair dealing, including withheld benefits, interest thereon, other general and special damages, attorney fees, witness fees and costs of litigation reasonably necessary and incurred to recover the policies' benefits.  At a minimum, Plaintiff argues, he alleges the "runaround" Defendant gave him forced him to retain counsel and ascertain his full rights and interests under the policy.

In reply, Defendant argues, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing fails because it is not tied to any provision of the insurance policy.  Defendant further argues the bad faith claims for mishandling funds lacks a plausible allegation of economic loss stemming from the alleged mishandling.  Defendant

argues Plaintiff's allegations of economic loss through general and special damages, attorney fees, witness fees and costs of litigation are conclusory.

The covenant of good faith and fair dealing is implied to prevent a contracting party from engaging in conduct which frustrates the other party's rights to the benefits of the contract. Love v. Fire Ins. Exchange, 221 Cal.App.3d 1136, 1153 (1990). "The precise nature and extent of the duty imposed by such an implied promise will depend on the contractual purposes." Egan v. Mutual of Omaha Ins. Co., 24 Cal.3d 809, 818 (1979).

In support of his claim for breach of the covenant of good faith and fair dealing, Plaintiff alleges Defendant breached the covenant by unreasonably and without proper cause failing to search DMF records to obtain notice of its insureds' death(s); unreasonably and without proper cause failing to pay death benefits within 30 days of the date of its insureds' death(s); unreasonably and with without proper cause failing to pay death benefits within 30 days of the date of receiving notice through the DMF of its insureds' death(s); unreasonably and without proper cause failing to make full claim payments on claims by paying interest at a rate untethered to the then-current rate at the time of the insured's death; failing to provide adequate explanations of claim payments, as required by California law; failing, upon request of claimants, to provide copies of the insurance policies on which claims are paid, thereby preventing them from knowing a) if and when policies may have converted to reduced-paid-up coverage and the amount of that coverage, and b) whether claims may have been enhanced through riders providing additional coverage; failing to provide, promptly, a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts of applicable law, for the offer of a settlement, in violation of California Insurance Code section 790.03(h)(13); compelling claimants to institute litigation to recover amounts due them, in violation of California Insurance Code section 790.03(h)(6); unreasonably placing its financial interests ahead of those of its policyholders and their beneficiaries; and unreasonably refusing to give at least as much consideration to the interests of its policyholders and beneficiaries as it gives to its own interests. FAC ¶ 77. He asserts, as a result of Defendant's conduct he and the class

members suffered damages including, withheld benefits, interest, and other general and special damages in an amount to be shown at trial. Id. ¶ 85. He further alleges he and the class members were compelled to retain legal counsel to obtain benefits due under their policies as a result of Defendant's conduct. Id. ¶ 86.

To the extent Plaintiff asserts a claim based upon a violation of section 10172.5(a), he fails to state a claim for breach of the covenant of good faith and fair dealing. Additionally, Plaintiff fails to allege economic loss resulting from Defendant's alleged mishandling of his claim. Accordingly, Plaintiff fails to sufficiently allege a claim for breach of the covenant of good faith and fair dealing.

**V. Leave to Amend**

Defendant requests the Court dismiss the FAC with prejudice. Plaintiff requests an opportunity to amend if the Court finds deficiencies in the FAC. In an abundance of caution, the Court will provide Plaintiff another chance to amend his complaint to sufficiently allege his claims.

**CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED:

1. Defendant's motion to dismiss is **GRANTED**.

2. If Plaintiff wishes to amend the complaint to address the deficiencies noted above, he may file a First Amended Complaint **on or before October 23, 2017.**

DATED: September 21, 2017

JOHN A. HOUSTON
United States District Judge